**In re William A. PADGET and Teri L. Padget, Debtors.**

**Bankruptcy No. 88–B–01677–A.**

United States Bankruptcy Court, D. Colorado.

Oct. 5, 1990.

**794**

Tom H. Connolly, Gibson, Dunn & Crutcher, Denver, Colo., for trustee.

Mary Deganhart–Weiss, McKie and Freeman, Englewood, Colo., for Century Bank at Orchard Road.

Lee D. Weinstein, Denver, Colo., for Metro Nat. Bank.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on a *Motion for Reconsideration of Order Approving Application for Compensation and for Payment of Dividends to Creditors* filed by Century Bank at Orchard Road ("Century Bank" or "Creditor" herein), Metro National Bank's Objection, Trustee's Objection, and Century Bank's Response to Objections. This Court held a hearing on the matter August 14, 1990, has reviewed the file, and is advised in the premises. After due consideration, the Court enters the following findings of fact, conclusions of law, and order.

The facts in this case present an interesting question of first impression in this District. The question involves how an *undersecured* creditor is to be treated by a Chapter 7 trustee in distribution of estate proceeds when the creditor filed a proof of claim, generally, as a secured claim. Here, the Creditor found itself substantially undersecured after sale of its collateral and consequently now wants to share in distribution of estate assets to holders of unsecured claims. The Trustee refuses the request.

The issue before the Court is whether a creditor who files a proof of claim denoted a *secured* claim, but whose claim becomes an *unsecured or undersecured claim* through lack of adequate value in the collateral securing the claim, and who fails to file an amended proof of claim for the unsecured portion of its claim, must be treated and paid from proceeds of the estate as an unsecured creditor by the trustee. Stated more simply, must a trustee pay an undersecured creditor from proceeds of the estate when the creditor filed a proof of claim as a secured creditor?

The Creditor maintains that (1) after it timely filed its proof of claim in the case, denoted as a secured claim, it did not need to file an amended or supplemental proof of claim to reflect its subsequent status as an unsecured, or undersecured, creditor and, (2) before distribution of estate proceeds, the Trustee is responsible for examining and ascertaining the legal status of each claimant in the estate and properly distributing the estate's proceeds to all creditors with unsecured and undersecured claims. The predicate of the Creditor's position is that, pursuant to 11 U.S.C. § 506(a),[1] its claim is, by operation of law, an unsecured claim to the extent that it exceeds the value of the collateral securing the claim and the Trustee must, automatically and as a matter of practice, treat the claim accordingly, i.e., as an unsecured claim.

The Chapter 7 Trustee argues that (1) he is entitled to rely on proofs of claim filed

---

1. "An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a).

by creditors for distribution of estate proceeds, and in this case, the Creditor filed its proof of claim, generally, as a secured claim, and (2) he is not obligated to monitor and independently ascertain the correct legal status of each creditor's claim, particularly those secured claims which devolve into undersecured or unsecured claims during the course of the case. The Trustee maintains, essentially, that the Creditor is responsible for filing, and the Code, Bankruptcy Rules, and good practice mandate, that a creditor file an amended, or supplemental, proof of claim reflecting an unsecured or undersecured claim and the amount of such claim.

For the reasons set forth in this Opinion, the Court concludes that a creditor filing a proof of claim denoted a secured claim shall be treated as a creditor with only a secured claim by the trustee for purposes of distribution of estate assets. *A creditor with an undersecured or unsecured claim, or a creditor with a secured claim that devolves into an undersecured or unsecured claim, must timely file an amended, or supplemental, proof of claim—or otherwise provide legally sufficient notice of same to the trustee—in order to be treated as an unsecured creditor of the estate and receive a pro rata distribution of estate proceeds.*[2] There are sound reasons and compelling law for this conclusion. They include the following.

### FINDINGS OF FACT

1. The Debtors filed a Voluntary Petition pursuant to Chapter 7 of the Bankruptcy Code on February 12, 1988. The notice of the meeting of creditors sent to creditors on March 17, 1988, indicated that there were no assets from which dividends could be paid. Subsequently, the Trustee recovered substantial funds for distribution and caused a Notice of Possible Dividend to

be sent to creditors requiring claims to be filed by October 17, 1988.

2. Fifteen claims were timely filed. Among the timely-filed claims was Claim No. 6 filed by Century Bank. Century Bank's Proof of Claim No. 6 consists of four pages. The first page is a standard proof of claim form containing ten numbered paragraphs. Paragraph two asserts a claim for $420,500.00. Paragraph nine states, "[n]o security is held for this claim except as set forth in attached Exhibit 'A.'" Paragraph ten was unaltered from the printed form and states, "[t]his is a general unsecured claim, except to the extent that the security, if any, described in paragraph 9 is sufficient to satisfy the claim."

3. Exhibit "A" referred to in paragraph nine of the proof of claim is a two-page promissory note with its own one page Exhibit "A" attached. The payee on the promissory note is Century Bank, but the maker is West Alameda Medical Associates, Ltd. Debtor's liability is derived from Debtor's personal guarantee endorsed on the first page of the note. The first page of the note also has a box which is checked and which states: "This note is secured by: See Exhibit "A" and 1980 Porsche SC serial # 91A014760." The last page of the proof of claim is Exhibit "A" to the promissory note which contains a list of additional items of collateral, set forth as follows:

1. 400,000 Shares—Worldwide Exchange Group Ltd. (Class B Common Stock).

2. Assignment of License Agreement between Worldgroup Companies, Inc. and Worldwide Exchange Group Ltd., as modified December 31, 1985 including assignment of all royalty payments due hereunder.

3. 27,000 Shares—Worldgroup Companies Inc. Stock.

---

**2.** The type, form and legal sufficiency of a proof of claim is not the principal subject of this Opinion. That is another question. For reference, *see In re Joeline Oranell Bowers,* 104 B.R. 362 (Bankr.D.Colo.1989), wherein it is held that an "informal proof of claim" may be deemed sufficient as a proper filing of a proof of claim

if: (1) the proof of claim is in writing; (2) the writing contains a demand by the creditor on the debtor's estate; (3) the writing expresses an intent to hold the debtor liable for the debtor; (4) the proof of claim must be filed with the Bankruptcy Court; and (5) based on the facts in the case it is equitable to allow the claim.

4. 70,000 Shares—Todex Manufacturing Co. Inc.

6. Deed of Trust on West Alameda property.

7. 25,000,000 Shares—Datawave Inc.

4. At no time did Century Bank file an amended or supplemental proof of claim.

5. In due course the Trustee examined the various claims and prepared, submitted, and provided notice to creditors of his final report. Attached to and made a part of Trustee's final report is a copy of the official claims register which identifies all filed claims and contains three columns where the Trustee identifies for each claim (i) the type of claim, (ii) whether Trustee proposed to allow or disallow the claim, and (iii) the amount of the dividend Trustee proposed to pay on the claim.

6. With respect to Claim No. 6 submitted by Century Bank, the Trustee indicated on the claims register his determination that the claim should be considered a secured claim, should be allowed, and should receive no dividend.

7. Trustee's final report and proposal for distributions together with an application for approval thereof was filed on February 22, 1990. A notice of Trustee's final report and proposed distribution was sent to all creditors pursuant to Local Rule 23. The notice summarized the details of Trustee's administration, indicated that a complete copy of the final report was available for inspection at the Bankruptcy Court, and set April 17, 1990 as the last day for creditors to object to the Trustee's final report and proposed distributions.

8. No objections were filed and the Court entered its order approving Trustee's final report and authorizing payment of dividends as proposed by Trustee on the claims register. Thereafter, Trustee issued dividend checks in accordance with the Court's Order. Shortly thereafter, Century Bank contacted the Trustee's of-

fice, learned of the treatment given its claim in the final report, and indicated an intent to file a motion for reconsideration.[3] Trustee immediately issued a stop payment order resulting in nonpayment of dividend checks for about half of the total distribution.

9. Century Bank's motion asserts that virtually all of the collateral listed on its proof of claim was in fact valueless and that its claim should have been treated as a general unsecured claim entitled to a dividend. Century Bank asserts that the Trustee erred by interpreting its claim as secured. Century Bank maintains that as a substantially undersecured creditor, it is entitled to receive a pro rata share of estate proceeds to be distributed to creditors holding unsecured claims.

10. Century Bank requests that it be released from the effects of the Court's final Order approving Trustee's final report and distribution of estate proceeds.

## DISCUSSION AND CONCLUSIONS OF LAW

■ The Court concludes that an undersecured creditor in a Chapter 7 case who files a claim denoted a secured claim must timely file an amended, or supplemental claim, for its unsecured claim—or give other legally sufficient notice of such claim to the trustee—if it desires to be treated as an unsecured creditor by the trustee. This would apply, as well, to creditors who determine their undersecured, or unsecured, status during the course of a bankruptcy case, as here. In this case, the Court declines to honor the Creditor's unsecured claim and sustains the Trustee's position. The Bankruptcy Code, Bankruptcy Rules, applicable case law and good practice compel that conclusion.

1. *The Bankruptcy Code and Bankruptcy Rules require filing a proof of claim for an unsecured creditor*

---

3. The record is not entirely clear if this communication informed the creditor of its treatment

by the Trustee or confirmed the treatment of

claim in Chapter 7.[4]

Any creditor *may* file a proof of claim. 11 U.S.C. § 501(a). Bankruptcy Rule 3002 specifically and expressly *mandates* filing a proof of claim for "an unsecured creditor" if that creditor is to receive a distribution from the Chapter 7 estate:

**Rule 3002. Filing Proof of Claim or Interest.**

*(a) Necessity for Filing.* An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed, except as provided in Rules 1019(4), 3003, 3004 and 3005.

B.R. 3002(a).

The design and language of the Bankruptcy Code and Bankruptcy Rules require filing a proof of claim for creditors with unsecured claims:

If a creditor wants its *unsecured* claim, or undersecured portion of a secured claim pursuant to 11 U.S.C. § 506(a), to be *allowed* and paid, in whole, or in part, 'then it *must* file a proof of claim in accordance with' B.R. 3002. [Footnote omitted.] The creditor must file a proof of claim within 90 days after the first date set for the Section 341 meeting, or if filed by a debtor, as here, then it must be filed within 30 days after that initial 90 day period of time. B.R. 3004. [Footnote omitted.] Thus, while the Rules are clear that unsecured creditors *must* file a proof of claim, there is no comparable, express mandate for secured creditors. [Footnote omitted.] (Emphasis supplied.)

*In re Johnson,* 95 B.R. 197, 200 (Bankr. D.Colo.1989).

While *In re Johnson* was a Chapter 13 case and involved questions concerning secured claims, its reasoning and conclusions apply in a Chapter 7 case with unsecured claims as well.

2. *Filed claims are deemed allowed claims and are prima facie evidence of the validity and amount of claim.*

Century Bank's proof of claim is Century Bank's statement of the amount and character of its claim and is presumptively valid and "deemed allowed" in the absence of an objection to same. Section 502(a) of the Bankruptcy Code states:

A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a).

The meaning of Section 502 is not ambiguous:

Section 502(a) means nothing if its essential significance is not that the *condition precedent to a claim or interest being deemed allowed is that proof of such claim or interest shall have been filed pursuant to Section 501* and, in accordance with the procedural implementation of that section, within the fixed time within which appropriate proof of claim or interest must be filed. (Emphasis added.) 3 Collier on Bankruptcy, para. 502.01 at 502.09. (Emphasis supplied.)

*In re Johnson, supra* at 200.

▪ The execution and timely filing of a proof of claim creates *prima facie* evidence as to the validity and amount of the claim. *Matter of Missionary Baptist Foundation of America, Inc.,* 712 F.2d 206 (5th Cir. 1983); B.R. 3001(f).[5] Upon objection to a claim, or disallowance of a claim, if the objector presents evidence of probative force equal to or greater than that supporting the creditor's proof of claim and, thus,

the creditor. It is not of real importance to this case in either event.

**4.** The requirement that an unsecured creditor file a proof of claim if it is to receive a pro rata distribution from an estate is abated in Chapter 11 where 11 U.S.C. § 1111(a) provides: "A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section

521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated." 11 U.S.C. § 1111(a). *See,* B.R. 3003(c).

**5.** *"Evidentiary Effect.* A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." B.R. 3001(f).

rebuts the *prima facie* effect of the claim, then the burden of proof shifts to the creditor. The ultimate burden of persuasion as to the validity and amount of a claim rests with the creditor. *In re Wells*, 51 B.R. 563, 566 (D.Colo.1985). In short, *a proper claim timely filed stands, absent objection.*

Judge Gueck provides some insight to this problem in *In re Wells*. In *Wells*, a creditor filed its claim as an unsecured creditor of a Chapter 13 debtor, but identified certain collateral on certain portions of the creditor's claim (two of four promissory notes were unsecured). After sale of the collateral by the creditor, it attempted to collect the deficiency against the debtor by way of its unsecured claim. The court held that the creditor had the burden to show it disposed of its collateral in a commercially reasonable manner, according to state law, and if it was unable to carry that burden, then the presumption that the value of collateral sold equals the amount of outstanding debt stands unrebutted. This resulted in the creditor being unable to prove that it had a valid unsecured claim under state law and thus an allowable claim in the bankruptcy case.

In the instant case, the Creditor has not only failed to prove it disposed of its collateral in a commercially reasonable manner, as in *Wells*, it has also failed to inform the Court or the Trustee of *any information* as to value or disposition of collateral, deficiency balance, or amount of unsecured claim. The Creditor filed a proof of claim identifying substantial and extensive collateral, without qualification, limitation, or explanation. The proof of claim stands.

3. *Trustee is reasonable and in compliance with statutory duties to rely on filed proofs of claim.*

■ Century Bank's only filed proof of claim contained preprinted portions requesting unsecured status to the extent of any deficiency and hand-typed additions indicating the existence of extensive and substantial collateral. In interpreting proofs of claim filed on printed forms, typed and hand-written additions entered by the creditor take precedence over the printed language. "Effect is to be given to words inserted in the body of an existing form, even if to do so requires a rejection of uncancelled provisions of the original draft." *N.L.R.B. v. Boyer Brothers, Inc.*, 448 F.2d 555 (3rd Cir.1971). On its face, Century Bank's proof of claim was a secured claim and Trustee properly read it as ·such. All inferences reasonably drawn from the proof of claim in this case compel a conclusion that the Creditor filed a secured claim against the Debtor.

■ The Trustee is the representative of the estate and, as such, represents all creditors generally. *See*, 11 U.S.C. § 323(a). However, pursuant to 11 U.S.C. § 704(5), it is the Trustee's duty, where a purpose would be served, "to examine proofs of claim and object to the allowance of any claim that is improper." 11 U.S.C. § 704(5). Thus, with respect to each individual claim in Chapter 7 cases, the trustee is typically the primary objecting and adverse party; others are not generally entitled to object to a creditor's claim. *See, In re Werth*, 54 B.R. 619, 622 (D.Colo.1985).[6] Consequently, a trustee should not, and is not charged with the obligation to, examine a claim with a purpose and view to increasing the claim or improving a claimant's status over that asserted by other creditors.

■ It is not a trustee's duty to protect individual creditors against the consequences of failing to file a claim, filing a late claim, filing an insufficient claim, or failing to properly assert a deficiency claim. It is a trustee's principal duty to object to unsubstantiated, excessive, or unallowable claims.

4. *The Creditor failed to timely and properly amend or supplement its proof of claim or object to the Trustee's treatment of claims.*

■ Century Bank had over one year in which to amend, or supplement, its claim

---

**6.** "The general rule is that when a trustee has been appointed, the debtor and his creditors may not object to the allowability of another creditor's claim. Collier, *Bankr.* § 502.01, at

502.14 (15th Rev.Ed.1979)." *In re Werth, supra* at 622. *But see*, 11 U.S.C. § 502(a) where the Code provides that "a party in interest ..." may object to a filed proof of claim.

and to state which portion was secured and which was unsecured, but failed to do so. In fact, the Creditor had almost two years to amend or supplement its claim prior to the Trustee's Final Report. Century Bank also received due notice of Trustee's application for approval of his final report, but did not timely object to entry of an order thereon.

The Order approving the Trustee's final report is a final Order. The Order approving Trustee's final report and authorizing distributions in accordance with that report was not an order disallowing claims pursuant to 11 U.S.C. § 502. The procedure and practice to object to and disallow a claim is directly and specifically controlled by other provisions of the Code and Rules.[7] Consequently 11 U.S.C. § 502(j) does not apply.

Century Bank's motion can only be considered under B.R. 9024 and hence, Rule 60(b)[8], F.R.Civ.P. *In re Rebeor*, 89 B.R. 314 (Bankr. N.D.N.Y.1988).

[Bankruptcy Rule 9024 allows] 'extraordinary judicial relief ... upon showing of exceptional circumstances' and should be broadly construed to do 'substantial justice'. *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986) (citations omitted); *In re Creed Bros., Inc.*, 70 B.R. 583, 586 (Bankr.S.D.N.Y.1987). However, final judgments should not be 'lightly reopened' since the Rule is not a substitute for a timely appeal. *Nemaizer v. Baker*, *supra*, 793 F.2d at 61. 'In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality.' *See Kotlicky v. U.S. Fidelity & Guar. Co., supra*, 817 F.2d [6] at 9 [ (2nd Cir.1987) ] (citing to 11 C. Wright & A. Miller, Federal Practice and Procedure § 2857 (1973)).

*In re Rebeor, supra* at 323.

Relief from the final Order approving Trustee's final report and authorizing distribution thereby is not available to Century Bank because in the instant matter there has been no showing of a "mistake" as contemplated in the rule by a party, a representative of a party or the Court, and no showing of fraud, misrepresentations or other misconduct by any party adverse to Century Bank. The Trustee's recommendation (based upon the proof of claim filed and whatever other factors the Trustee took into account) that the claim of Century Bank categorized as secured and allowed cannot be characterized as a "mistake" upon which Rule 9024 relief is based. The Trustee's recommendation is merely a position asserted by him in a potentially contested matter which Century Bank did not contest, but now asserts is contrary to the position it would like to take, or would like to have taken. As has been shown, the Trustee is by statute the proper adverse party with respect to individual claims. Century Bank cannot predicate relief under B.R. 9024 on Century Bank's tardy disagreement with an adverse position taken by an adverse party. The time for Century

---

7. "An objection to the allowance of a claim shall be in writing and filed with the court. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." B.R. 3007; *see*, 11 U.S.C. § 502(a), (b); Local Rule 23.

8. **"Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation...." Rule 60(b), F.R.Civ.P.

Bank to have objected to the Trustee's position was prior to the entry of this Court's Order approving Trustee's final report. Failing that, Century Bank could have taken a timely appeal from that Order.[9]

This situation is also not one which calls for vacating the final Order based on "excusable neglect." *See, Pelican Production Corp. v. Marino, et al.*, 893 F.2d 1143 (10th Cir.1990); *In re Centric Corp.*, 901 F.2d 1514 (10th Cir.1990). The absence of "extraordinary circumstances," the nature and extent of the Creditor's delay, the burden placed on the Trustee and creditors, and the adverse impact on Court and estate administration, are features of this case which compel a conclusion that excusable neglect is not present and does not justify granting the Creditor relief in this matter.

IT IS THEREFORE ORDERED that Century Bank at Orchard Road's Motion for Reconsideration of Order Approving Application for Compensation and Reimbursement of Expenses and for Payment of Dividends to Creditors is hereby DENIED.

---

9. The mistakes to which the Trustee alludes are *not* those which are "mistakes" contemplated by the rule to vacate the Court's Order: (i) Century Bank's enumeration of *substantial and extensive* collateral without qualification or limitation, when it intended to present an unsecured claim, (ii) Century Bank's failure to amend, or supplement, its claim to set forth a deficiency, or unsecured, claim, (iii) Century Bank's failure to *timely object to Trustee's final report*, and (iv) Century Bank's failure to timely appeal the Order approving Trustee's final report.