## In the MATTER OF VERDUNN, Thomas B., Debtor.

**Bankruptcy No. 92–460–8B3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 4, 1993.

B. Gray Gibbs, St. Petersburg, FL, for debtor.

I.R.S., Jacksonville, FL.

Susan Roark Waldron Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC.

U.S. Atty., Tampa, FL.

Terry E. Smith, Trustee, Bradenton, FL.

## ORDER

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for hearing upon Thomas B. Verdunn's (Debtor's) Motion for Partial Summary Judgment with respect to Debtor's Objection to the Internal Revenue Service's (Service's) Proof of Claim. The Court, having heard the argument of counsel and having reviewed the Motion for Summary Judgment, the Objection to the Internal Revenue Service's Proof of Claim, the record, and the memoranda filed by counsel, finds the undisputed facts as follows:

On January 14, 1992 Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (Bankruptcy Code). The Service filed a timely Proof of Claim on May 4, 1992. The Proof of Claim, in the amount of $297,170.88, includes an unsecured priority claim of $133,181.40, and an unsecured general claim of $163,989.48.

Prior to the petition for relief under Chapter 13, Debtor had pleaded guilty to two (2) criminal counts of False Statements/Perjury under Title 26 of the United States Code § 7206(1) (I.R.C.). In addition, Debtor received a Notice of Deficiency dated September 25, 1990. In the deficiency the Service made a determination of underpayment of taxes, all of which is claimed to be due to

fraud for the years 1982, 1983, 1984, and 1985. The civil fraud penalties arise under I.R.C. § 6653(b)(1), and (2), and substantial understatement penalties under I.R.C. § 6661 for those years. The notice also set forth a deficiency for 1986, based on underpayment due to negligence, delinquency penalty (I.R.C. § 6653(a)(1)(A)), and penalties for negligence (I.R.C. § 6653(a)(1)(A), and (B)). There are additional interest claims for all of the years at issue.

On September 23, 1992, Debtor filed an Objection to the Proof of Claim by the Service, which was later amended on October 15, 1992. The Debtor then filed, on March 4, 1993, a Motion for Partial Summary Judgment with respect to Debtor's Objection to the Proof of Claim submitted by the Service for the Years 1983, 1984, and 1985. Arguments were heard on July 2, 1993 with respect to the Motion for Partial Summary Judgment. This Court found there was a material question of fact as to whether the Debtor filed fraudulent income tax returns for the years 1983, 1984, and 1985, and denied Summary Judgment. Subsequently, the parties did agree that the income tax return for 1982 was fraudulent.[1]

The linchpin of Debtor's argument is 11 U.S.C. § 507(a)(7)(A)(iii) precludes tax fraud claims from priority and the "super discharge" of 11 U.S.C. § 1328(a)(2) permits tax fraud liabilities to be discharged. Generally, a governmental unit such as the Service, may have a priority claim provided the claim satisfies 11 U.S.C. § 507(a)(7)(A)(i), (ii) or (iii).[2] Debtor's argument is 11 U.S.C.

§ 507(a)(7)(A)(iii), in which the Service's tax fraud claims appear to conform, excludes tax fraud claims by reference to 11 U.S.C. § 523(a)(1)(C). In addition, Debtor argues the tax fraud claims are dischargeable by virtue of the "super discharge" of 11 U.S.C. § 1328(a).

Bankruptcy Code Section 507(a)(7)(A)(iii) establishes priority for tax claims " . . . other than a tax of a kind specified in section . . . 523(a)(1)(C)." Section 523(a)(1)(C) states "a tax . . . with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax. . . ." Thus, a fraud tax claim is specifically excluded as a priority claim. Therefore, Debtor claims tax fraud liabilities are afforded treatment in a Chapter 13 case, unavailable in Chapters 7, 11, or 12.[3]

In support of the argument, Debtor cites *Muina v. United States (In re Muina)*, 75 B.R. 192 (Bankr.S.D.Fla.1987). In *Muina*, the Tax Court held there was a deficiency in the debtors' income tax for the year 1981. In addition, there was a fraud penalty imposed. As in the instant case, all liabilities for taxes were assessable after the commencement of the Chapter 13 case. The debtors in *Muina* argued the language of 11 U.S.C. § 507(a)(7)(A)(iii) specifically excluded the taxes named in 11 U.S.C. § 523(a)(1)(C) as being priority claims. The Court in *Muina* found the taxes owed by the debtors were not entitled to priority. 11 U.S.C. § 507(a)(7)(A)(iii); 11 U.S.C. § 523(a)(1)(C).

---

1. Debtor exercised his right under I.R.C. § 6213 to petition the Tax Court for a redetermination of the deficiency. Debtor's petition claims the Service's determination is erroneous to all years in question. The petition was timely filed and set for trial on February 24, 1992. However, since the Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code, the Tax Court, on February 19, 1992, appropriately entered an Order striking the proceeding from trial and staying all proceedings pursuant to 11 U.S.C. § 362. Upon Motion by the United States, an Order was granted lifting the Automatic Stay to allow the Tax Court proceeding to continue on December 7, 1992. To date no trial session of the Tax Court has been set, but Debtor has posted bond with respect to the 1982 liabilities owed to the Service.

2. Under 11 U.S.C. § 507(a)(7)(A)(i) and (ii), the Service's claim would unquestionably be entitled to priority, had there been an assessment or a return due within three years before the date of filing the petition. Since there are no facts to support the application of those subparagraphs, the Service's claim must be placed under the purview of 11 U.S.C. § 507(a)(7)(A)(iii).

3. Under all of these Chapters there are provisions that affirmatively prevent relief from tax fraud liability. *See* 11 U.S.C. §§ 727, 1141(d), and 1228(a)(2). Chapter 12 is a hybrid chapter developed with Chapter 13 in mind and having a provision which excepts tax fraud claims from discharge would support Debtors' argument the legislature intended tax fraud claims to be treated as general unsecured liabilities.

While there is a paucity of authority considering *Muina,* another court has held priority status would not be afforded a tax liability specified in 11 U.S.C. §§ 523(a)(1)(B) or 523(a)(1)(C) in a Chapter 13 case. *Torrente v. United States (In re Torrente),* 75 B.R. 193 (Bankr.S.D.Fla.1987). The Court in *Torrente* made a finding the tax was not the type described in 11 U.S.C. § 523(a)(1)(B), and by negative inference, a 11 U.S.C. § 523(a)(1)(B) or (C) tax claim would have been general unsecured and not entitled priority.

On brief, the Service questions the corollary that follows from *Muina* and *Torrente,* stating "[i]t is difficult to understand how Congress could have intentionally provided Chapter 13 debtors who had committed tax fraud, should be allowed to escape the full measure of liability for their fraudulent behavior." Yet, this is not the first unusual result in Chapter 13 addressed by Congress. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council,* — U.S. ——, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993). Prior to November 15, 1990, a drunk driver could escape payment of a civil judgment by filing under Chapter 13. Congress responded to the problem. Pub.L. 101–581, Nov. 15, 1990 (adding § 1328(c)(2)). Although not dischargeable under Chapter 7, student loans were not exceptions to discharge until Subsection (a)(2) of 11 U.S.C. § 1328 was amended by the Student Loan Default Prevention Initiative Act of 1990. Pub.L. 101–508, Nov. 5, 1990 (as part of the Omnibus Reconciliation Act). In addition, convicted felons were permitted to discharge their restitution obligations to victims or the State, merely by filing a Chapter 13.[4] *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). Thereafter, Chapter 13 was amended to make criminal restitution nondischargeable. Criminal Victims Protection Act, Pub.L. 101–581, § 3, 104 Stat. 2865 (Nov. 15, 1990) (adding § 1328(c)(3)).

■ From the clear language of the Bankruptcy Code, tax fraud claims are not afforded priority in Chapter 13 cases. 11 U.S.C. § 507(a)(7)(A)(iii). In as much as "the statutory scheme is coherent and consistent, there . . . is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). It is up to Congress to change this result, not this Court.

The fraud claims of the Service are not priority, they are generally unsecured. If a debtor meets the eligibility requirements for relief under Chapter 13, *see* 11 U.S.C. § 109(e),[5] he may obtain a confirmation plan that tempers the rights of secured or unsecured claim holders, and that "provide for the payment of all or any part of a permitted claim." 11 U.S.C. § 1322(b)(2) and (6).

The Service argues the Debtor should not be permitted to obtain relief under Chapter 13. If the Service has liquidated, noncontingent, unsecured claims in excess of the qualifying limitation, Debtor will fail the jurisdictional requirements of 11 U.S.C. § 109(e).[6] At this point, this Court does not find these claims to be noncontingent or liquidated.

Under the Code, "claim means . . . right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured,

---

**4.** In the dissenting opinion of *Davenport,* Justices O'Conner and Blackmun regarded the majority opinion as an invitation to use the Code as a "shield" to protect a criminal from punishment. A dilemma was predicted for sentencing courts to consider harsher sentences or restitution agreements. The harsher sentence could not be affected by a Bankruptcy Court, but a restitution agreement could be altered.

**5.** Section 109(e) states in relevant part: "Only an individual . . . on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent,

liquidated, secured debts of less than $350,000, . . . may be a debtor under chapter 13 of this title."

**6.** For eligibility under 11 U.S.C. § 109(e); *see In re Strober,* 136 B.R. 614, 625 (Bankr.E.D.N.Y. 1992) (following *In re Magras,* 129 B.R. 429 (Bankr.D.V.I.1991) and not following *In re Morton,* 43 B.R. 215 (Bankr.E.D.N.Y.1984)) ("The financial limits imposed on the use of Chapter 13 must be respected even if not immediately apparent from the Debtor's schedules.") *Cf. In re Day,* 747 F.2d 405 (7th Cir.1984).

or unsecured." Congress intended by this language to adopt the broadest available definition of "claim." *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); see also *Ohio v. Kovacs*, 469 U.S. 274, 279, 105 S.Ct. 705, 707, 83 L.Ed.2d 649 (1985).

■ The total unsecured claims of the Service are in Debtor's schedules as $297,170.88. Debtor objects to the amount, character as well as the proposed priority in the proof of claim for 1983, 1984, 1985, and 1986. This Court has found that the tax fraud liabilities are not priority, and as stated above, 11 U.S.C. § 109(e) places a limitation of $100,-000 in noncontingent, liquidated, unsecured debts. It does not appear from the record that the undisputed 1982 liabilities will be enough to exceed this amount. In addition, the Service avers they are secured for the amount of the bond the Debtor has provided to stop the interest from accruing on 1982 liabilities. There is no doubt that there is a "security" in the bond. 11 U.S.C. § 101(49)(a)(iv). However, to be a secured creditor the Service must satisfy 11 U.S.C. § 506(a). Debtor and the Service refer to the 1982 liabilities as unsecured, therefore this court will treat them as unsecured for the purpose of determining the amounts associated with 11 U.S.C. § 109(e). *See also In re Celotex Corp. et al.*, 128 B.R. 478 (Bkrtcy. M.D.Fla.1991).

■ A properly filed proof of claim is prima facie evidence of the validity and amount of the claim. Fed.R.Bankr.P. 3001(f). A proof of claim is the creditor's statement of the amount and character of the claim. *In re Padget*, 119 B.R. 793, 797 (Bankr.D.Colo. 1990). The claim is allowed absent objection. 11 U.S.C. § 502(a).[7] Debtor has made an objection to the character and amount of the

Service's claim for 1983, 1984, 1985 and 1986. Notwithstanding Debtor's labeling of the Service's claim as unliquidated in his schedule of creditors holding unsecured nonpriority claims and his objection to proof of claim, if the Service's claim is ultimately determined to be liquidated and noncontingent Debtor may not be eligible for relief under Chapter 13 of the Bankruptcy Code. *See In re Tashman*, 13 B.R. 549, 550 (Bankr.D.Vt. 1981); *In re Hutchens*, 69 B.R. 806 (Bankr. E.D.Tenn.1987); *In re McMonagle*, 30 B.R. 899, 903 (Bankr.D.S.D.1983).

■ To satisfy this condition the first requirement is the debt must be "noncontingent." "A debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." *Loya v. Rapp (In re Loya)*, 123 B.R. 338, 340 (9th Cir. BAP 1991). Debtor contends there is a contingent future event that will fix liability. A debt is contingent only if a defined future event must happen to make it noncontingent. Debtor has filed income tax returns for the years in question, the tax liabilities are not contingent on the filing of the returns. However, there has been no assessment and the nature and character of the liabilities have yet to be decided, therefore they are deemed noncontingent for the present.

■ The second requirement is that the debt be "liquidated." "Liquidation turns not upon whether the claim is disputed, but rather whether the claim is capable of ready determination." *In re Harbaugh*, 153 B.R. 54 (Bankr.D.Id.1993) *citing Loya*, 123 B.R. at 340–41. "The definition of ready determination turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evi-

7. "In short, a proper claim timely filed stands, absent objection." *In re Padget*, 119 B.R. 793, 798 (Bankr.D.Colo.1990). In *Padget*, the creditor filed a proof of claim stating its claim was secured by vast collateral. The plan was confirmed treating the creditor's claim as secured. Creditor argued the collateral was valueless and its claim should have been treated as a general unsecured claim. *Id.* at 795.96. The court concluded the trustee properly treated the claim as secured because the proof of claim was, on its face, for a secured claim. Id. at 798. The court

rejected the creditor's argument, pursuant to 11 U.S.C. § 506(a), the trustee was required to treat the claim as unsecured to the extent it exceeded the value of the collateral securing the claim, notwithstanding the designation of the claim in the proof of claim, id. at 794. The court concluded the creditor was not entitled to assert an unsecured claim for the deficiency after the sale of the collateral without filing an amended or supplemental proof of claim or otherwise providing sufficient notice of the same to the trustee. Id. at 796.

dence may be necessary to establish amounts or liability." *Id.* (*quoting Fed. Deposit Ins. Corp. v. Wenberg (In re Wenberg)*, 94 B.R. 631, 634 (9th Cir. BAP 1988)). Professor McCormick addresses liquidated as:

> [a] claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion.... [A claim] is still 'liquidated', by what seems to be the preferable view, even though it is disputed in whole or in part.

C.T. McCormick, *Damages* § 54 p. 213 (1935). This proposition has been followed by other courts. *See In re Robertson*, 143 B.R. 76 (Bankr.N.D.Tex.1992); *In re Sylvester*, 19 B.R. 671 (9th Cir. BAP 1982).

■ Generally, a determination that there is tax due is prima facie evidence of tax liability. I.R.C. § 7481(d); *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935). Debtor must prove by preponderance of the evidence that the tax liabilities and interest on those liabilities are incorrect. In contrast, the Service must prove by the preponderance of the evidence tax fraud liabilities are correct. I.R.C. § 7454. The taxes as expressed in the Service's proof of claim are all, with the exception 1986, based on tax fraud. There is a dispute as to the character and nature of these claims in which the Service will have the burden of proof. Although Debtor has filed income tax returns for the years in question, the tax liabilities are not readily determinable from the documents before the Court and therefore they are deemed unliquidated.

There is no dispute only as to the character of Debtor's liability for 1982. The Service's claim for 1983, 1984, 1985, and 1986 are contingent, or unliquidated, debts. Therefore, pursuant to 11 U.S.C. § 109(e), Debtor is eligible for relief under Chapter 13 of the Bankruptcy Code at least as to the determination of the tax liability.

■ The Service also questions whether a Debtor may take advantage of Chapter 13 and meet the good faith requirement of 11 U.S.C. § 1325(a)(3), where the debts sought to be discharged arise from tax fraud. Under 11 U.S.C. § 1325(a)(3), a Chapter 13 plan must be filed in good faith prior to being confirmed. "The good faith requirement is one of the most important confirmation findings to be made by the Court in a Chapter 13 case." *See Georgia R.R. Bank & Trust Co. v. Kull (In re Kull)*, 12 B.R. 654, 658 (Bankr. S.D.Ga.1981), *aff'd, In re Kitchens*, 702 F.2d 885 (11th Cir.1983); *In re Whipple*, 138 B.R. 137 (Bankr.S.D.Ga.1991).

Unfortunately, "good faith" is not defined in the Bankruptcy Code, with respect to filing a Chapter 13 plan. The 11th Circuit adopted an inexhaustive list of eleven factors pronounced in *In re Hale*, 65 B.R. 893 (Bankr.S.D.Ga.1986), to find the existence of good faith. *Kitchens*, 702 F.2d at 888–89.[8]

---

**8.** Those factors relied upon in *Kitchens* include, but are not limited to:

1) The amount of the debtor's income from all sources;
2) The living expenses of the debtor and his dependents;
3) The amount of attorney's fees;
4) The probable or expected duration of the debtor's Chapter 13 plan;
5) The motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;
6) The debtor's degree of effort;
7) The debtor's ability to earn and the likelihood of fluctuation in his earnings;
8) Special circumstances such as inordinate medical expenses;
9) The frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessor;
10) The circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;
11) The burden which the plan's administration would place on the Trustee.

Additionally, the Court adopted substantiality of repayment and potential nondischargeability of the debt in a Chapter 7 case as factors to be considered in finding good faith. *In re Hale*, 65 B.R. 893, 895 (Bankr.S.D.Ga.1986). This has become known as the "totality of the circumstances" test and has been adopted by other courts. *In re LeMaire*, 898 F.2d 1346 (8th Cir. 1990); *In re Smith*, 848 F.2d 813 (7th Cir.1988); *In re Okoreeh–Baah*, 836 F.2d 1030 (6th Cir. 1988); *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir.1986); *In re March*, 83 B.R. 270 (Bankr. E.D.Pa.1988).

■ The Service comments Debtor could not discharge this debt in a Chapter 7 case. The potential nondischargeability of a debt in a Chapter 7 case is a limited factor to be considered. However, this fact is not *per se* bad faith under 11 U.S.C. § 1325(a)(3), but rather is simply one of many factors to be considered in applying the totality of circumstances standard. *See Kitchens,* 702 F.2d at 889.

■ The Service also questions the motivations of Debtor and the sincerity in seeking relief under the provisions of Chapter 13. If it were up to the Service, the Debtor's Chapter 13 plan would be thwarted as not composed in good faith simply because they have filed faster than a creditor could perfect a lien. This is not a controlling argument, but there is substance to the point there is only one creditor, the Service, and the Debtor wishes to reduce payment on that claim to 20%. *See In re Smith,* 848 F.2d at 818; *In re Rimgale,* 669 F.2d 426 (7th Cir.1982).

Congressional intent, in relation to 11 U.S.C. § 1325(a)(3):

> ... as amended, neither prescribes nor authorizes the imposition by the court of a requirement that a chapter 13 plan propose any arbitrary minimum percentage or amount to creditors. Instead, it contemplates that the court determine whether the plan proposed in the particular case represents a good-faith effort to settle the claims of creditors to the extent feasible ... during the pendency of the proposed extension period as permitted under subsection 1325. . . . [T]he court [could] confirm a chapter 13 plan which proposes no dividend whatever to holders of allowed unsecured claims or that the court deny confirmation of a plan proposing a 95% dividend to the holders of such claims.

H.R.Rep. No. 1195, 96th Cong., 2d Sess. pt. 1, at 24–26 (1980). Again, the amount of a debtor's payments under the plan is only one of the issues to be considered as part of the good faith standard as juxtaposed against disposable income and best interests of creditors test. *See* 11 U.S.C. § 1325(a)(4) and (b); *Smith,* 848 F.2d at 818.

■ To find lack of good faith, there should be a showing of serious misconduct or abuse on the part of debtors. *Id.* Where, as in this Chapter 13 case, the trustee does not object to confirmation, the burden is on the party objecting to prove the existence of some factor to prevent confirmation. The Service complains the filing for relief five weeks prior to Debtor's scheduled Tax Court appearance and failure to follow through with that litigation is evidence of a plan to defraud the Federal Government. However, the actions of the Debtor are strategic not abusive. Debtor is using the Bankruptcy Code within the concept of a fresh start when subject to a real and substantial threat of economic harm.

This Court is unpersuaded a debtor has a plan to defraud the Government where expenses and debts have been accurately stated, and there has been no showing of fraudulent misrepresentation in seeking relief under Chapter 13. Debtor had the same information as did the Service. "[T]he courts only inquiry is to determine whether the debtor seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended." *In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 905 (Bankr.E.D.Pa.1987). Congress allows an eligible debtor the opportunity to reorganize. This promotes open access to the bankruptcy process. *See In re Johns–Manville Corp.,* 36 B.R. 727, 735–37 (Bankr.S.D.N.Y.), *appeal denied,* 39 B.R. 234 (1984).

This Court is unwilling on a *per se* basis to find a lack of good faith merely where a debtor is seeking to discharge Tax Claims, albeit fraudulent, especially where the Bankruptcy Code gives certain dispensations. The parties will have to await the outcome of the final hearing on the objection to the tax claim before a testing of the plan can be made at confirmation.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED Debtor's Motion for Summary Judgment is granted as there is no issue of material fact and that the 1982 tax fraud claims of the Internal Revenue Service, not in dispute, are general unsecured liabilities

not given priority status in this Chapter 13 case.

DONE AND ORDERED.