### In re ASHLAND STEEL CO., et al.

(Circuit Court of Appeals, Sixth Circuit.  March 16, 1909.)

#### No. 1,862.

1. BANKRUPTCY (§ 350*) — CLAIMS—PRIORITIES UNDER STATE LAWS—TIME FOR CLAIMING PRIORITY.

> Claims proved against the estate of a bankrupt, which from their nature are entitled to priority under a state statute, may be allowed such priority, although it is not claimed until more than a year after the date of the adjudication, when the question of distribution of assets first arises.
>
> [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 350.*]

2. BANKRUPTCY (§ 345*)—CLAIMS—PRIORITIES—WAIVER OR ESTOPPEL.

> While Bankr. Act July 1, 1898, c. 541, § 56b, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443), provides that creditors holding claims which have priority shall not, in respect to such claims, be entitled to vote at creditors' meetings, the fact that such a creditor does vote on the election of a trustee by inadvertence or mistake is not a waiver of his right of priority; nor does it estop him from claiming the same, where no other creditor has been prejudiced thereby.
>
> [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 345.*]

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of Kentucky, in Bankruptcy.

S. S. Willis, for petitioners.

Before LURTON and SEVERENS, Circuit Judges, and KNAPPEN, District Judge.

SEVERENS, Circuit Judge.  This is a petition for the review of an order of the District Court, made in a bankruptcy proceeding in the matter of E. M. Roberts Company, which was adjudicated bankrupt December 6, 1906.  The petition is by six of the creditors of the bankrupt, who within six months after the adjudication established claims giving them a preference in the distribution of the assets by virtue of a statute of Kentucky giving priority to those who shall have furnished

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

materials or supplies to manufacturing companies doing business in the state. Section 2487, Ky. St. 1903. The E. M. Roberts Company was such a company. These creditors did not vote at the election of the trustee. Other creditors having similar claims proved them before the referee and voted at the election without objection. The trustee was elected by the unanimous vote of all the creditors voting, and the election was approved. But these other creditors did not make any special claim of priority until after the expiration of one year from the date of the adjudication of bankruptcy. Shortly thereafter they severally filed amended petitions praying for the establishment of their claims to priority in the distribution of the assets, which had not yet taken place. The six creditors, who are the petitioners here, and who had, as above stated, established priority for their claims within the year allowed for proving claims, objected to the allowance of the claims of priority made by the other creditors after the expiration of the year, upon grounds presently to be stated. The referee overruled the objections and admitted the claims of the other creditors to priority, in common with the objecting creditors. Upon a petition for review, the District Judge confirmed the order of the referee. The grounds of the objection taken by the present petitioners against the allowance of priority to the other creditors before the referee, and renewed here, are these:

"First. Because said claims were not filed as preferred, prior, or lien claims, based upon section 2487 of the Kentucky Statutes, until more than one year after December 7, 1906, on which date the said E. M. Roberts Company was adjudicated a bankrupt, which was too late, under section 57n of the bankruptcy act of 1898, to file an amended proof of claim setting up a new cause of action and making a different demand.

"Second. Because each and every one of said creditors named filed their proofs of claim as unsecured debts and voted as general creditors in the election of the trustee, and elected Calvin S. Weakley, trustee in bankruptcy of the said E. M. Roberts Company, and thereby waived any and all claim they had or might have had to priority or lien, and are thereby estopped from claiming or asserting a lien herein."

1. It is to be observed that the claims of the other creditors (as we are calling them) carried with them an inherent privilege of priority. The privilege was not a detached right, which could only be fastened by special proceedings taken to enforce it, as by an attachment or an execution or the enforcement of a mechanic's lien. It needed only to be proved, when the time should arrive for distributing the assets. According to the report of the referee to the District Judge, nearly all of these claims showed on their face that they were claims to which the Kentucky statute gave priority. A few of them did not; but the referee reported that these latter were proven to be claims of that character. We think that, the substantive claims having been proven within the time allowed by the act, it was within the power of the court to allow the claims priority, and give them the preference to which by law they were entitled, notwithstanding no definite claim of the kind had been made during the year. It was not the allowance of a new claim, as counsel for petitioners insist, but the giving full scope to one already proved. It was essentially the ascertainment of its rank to be regarded in the distribution of the assets.

The word "claim," in section 57n (Act July 1, 1898, c. 541, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3444]), we should suppose, refers to the substance of the obligation, rather than to any mere attribute of it. The lien being inherent in the debt, it would have been allowable in an action at common law to permit an amendment which would give cognizance of it without violating the statute of limitations. And the decisions which have been made upon the effect of section 57n seem to be generally that such amendment as this (if it is to be termed an amendment) is permissible. Several of them are collected and commented upon in Loveland on Bankruptcy (3d Ed.) 404, 405.

2. The other ground of objection is that, by section 56b, "creditors holding claims which are secured or have priority, shall not, in respect to such claims, be entitled to vote at the creditors' meeting, nor shall such claims be counted in computing either the number of creditors or the amount of their claims, unless the amount of such claims exceeds the value of such securities, and then only for such excess"; that the other creditors were present at the first meeting of creditors and voted for the trustee; and that by this they signified their intention to "waive or surrender their security," or, rather, that they should thereafter be estopped from asserting it, which is another form of stating what in the circumstances are equivalent propositions. It is the assertion of the principle of an estoppel by conduct. The statute does not say that such a consequence shall follow the voting by a creditor who is disqualified, or that he shall surrender his preference before he can vote; and in order to lay the foundation of an equitable estoppel it must be made to appear that the other party has lost some right or has been led into some course of conduct whereby he will suffer injury if the act or representation of the party to be estopped is revoked or held for naught; and within the scope of its jurisdiction, the court of bankruptcy is a court of equity, as well as of law.

It does not appear that any creditor objected to the voting by these creditors, and the referee accepted their votes, although it appeared that, in very many of the cases, the claims were such as had priority by force of the statute of Kentucky. The trustee was elected by a unanimous vote, and there was no objection to the fitness of the trustee. It is to be inferred that he was approved by the referee, for his election would not have been complete without such approval. In short. there is nothing tending to show that any one was injuriously affected. As those creditors did nothing else to signify that they intended to surrender so valuable a right, and the circumstances being such as we have described, we think the fair inference is that their voting was an inadvertence on their part, as well as on that of the referee, and without any declaration of intention to surrender their priority in the bankrupt's assets in order to qualify themselves to vote for a trustee. It was a mutual mistake, against the consequences of which equity would relieve. Nor is a party bound by an election made under a misapprehension of one's rights, especially where the other party suffers no injury from its revocation. No harm was done, or is suggested as possible to have occurred, to any one. Nor do those creditors seek to gain any advantage over the petitioners in seeking to establish their priority over general creditors, except that the peti-

tioners may lose the increase in dividends which they would gain by shutting the others out; and the sum of the whole matter is that those creditors are put on the same plane with the petitioners, a position to which they are equally entitled, unless by some slip, which the law treats as fatal, they have lost it. The petitioners have no equity which requires a reversal of the order of the District Court.

We think these views are in accord with prior decisions upon the subject in other jurisdictions, where similar circumstances existed, and like principles were applicable. Loveland on Bankruptcy (3d Ed.) 45, and cases cited in note 14. The case of In re Eagles (D. C.) 99 Fed. 695, is relied upon by counsel for petitioners, and some expressions of the District Judge would seem to support their contentions. But that case involved only the question of the qualification of creditors to vote for a trustee. The consequences of their voting, in so far as they concerned the ultimate disposition of the assets, was not before the court.

The order appealed from will be affirmed, with costs to be paid by the petitioners.