### ENSLEY v. FIRST NAT. BANK OF HOOPESTON.

(District Court, E. D. Illinois. February 28, 1927.)

No. 22–D.

1. Bankruptcy ⊂⇒303(4)—Evidence held insufficient to establish that mortgage made within four months constituted voidable preference.

Evidence *held* insufficient to establish that a bank, at the time of execution to it of a mortgage by bankrupt to secure an antecedent debt, within four months prior to his bankruptcy and when insolvent, knew, or had reasonable cause to believe, that he was insolvent.

2. Bankruptcy ⊂⇒303(2)—Testimony of repute of bankrupt as an insolvent held incompetent to impeach mortgage as preference.

Testimony that at the time a debtor executed a mortgage to secure an indebtedness within four months prior to his bankruptcy, it was commonly reputed that he was insolvent, *held* incompetent to prove that the mortgagee knew or had reasonable cause to believe that the mortgagor was insolvent.

3. Bankruptcy ⊂⇒312—Secured creditor, which mistakenly proved claim as unsecured, held not estopped to withdraw it and rely on security.

Proving of its debt by a secured creditor as an unsecured claim, and a statement by its attorney that the security would be released, made in the belief that it was avoided by the bankruptcy, *held* not to create an equitable estoppel, which prevented the creditor from withdrawing its claim and relying on the security; no other creditor having been prejudiced.

4. Bankruptcy ⊂⇒312—Action of president of bank holding a mortgage in attempting to have filing of petition delayed held not to estop bank from enforcing its mortgage.

That the president of a bank, which held a mortgage executed by a debtor within four

months, offered to purchase the claim of an unsecured creditor or to pay him a fee for withholding petition in bankruptcy until after four months from date of the mortgage, *held* not to create an estoppel which prevented the bank from enforcing its mortgage.

In Equity. Suit by George W. Ensley, trustee in bankruptcy of Peter H. Youngblood, against the First National Bank of Hoopeston. Decree for defendant.

Dyer & Dyer, of Hoopeston, Ill. (J. H. Dyer, of Hoopeston, Ill., of counsel), for plaintiff.

Gunn, Penwell & Lindley, of Danville, Ill. (Walter T. Gunn, of Danville, Ill., of counsel), for defendant.

LINDLEY, District Judge. The plaintiff, trustee in bankruptcy, filed suit in equity to cancel a mortgage given to defendant bank within four months prior to the filing of the petition in bankruptcy and alleged to be a voidable preference. The master in chancery found that at the time of the execution of the mortgage, more than three months prior to the adjudication in bankruptcy, the bankrupt was insolvent, but that at said time the defendant and its officers acting for it in the premises had no reasonable ground to believe that a preference would result from the taking of the mortgage, no knowledge of the bankrupt's insolvency, and no such knowledge of the condition of the bankrupt's affairs as would put them as reasonably prudent business men upon inquiry which would have resulted in knowledge of the bankrupt's insolvency, or of such facts as would have given them reasonable cause to believe that a preference would result from the transfer. The mortgage was given to secure a debt of approximately $6,000 previously unsecured, except for the personal liability of the bankrupt's wife, who owned considerable assets.

[1] Plaintiff excepts to the findings and conclusions of the master, and, in view of the earnest argument of his solicitor, the court has examined carefully all of the evidence submitted, and is of the opinion that the master's findings should not be disturbed. There is no direct evidence of any knowledge of the bankrupt's condition at the time of the execution of the mortgage on the part of the bank's officers. There is no showing that the bank had any knowledge of any debts other than the mortgages upon certain real estate located in part in Illinois and in part in Arkansas. One witness testified that the president of the bank, a few days prior to the filing of the petition in bankruptcy, stat-

ed that the defendant was "broke" at the time the mortgage was taken; but there is no testimony that that officer, or any other person employed by the bank, had any knowledge of that fact at the time the mortgage was executed. Within a few days after the mortgage was received, the bankrupt delivered to the bank his financial statement, showing an excess of assets over liabilities of over $20,000. At the time the mortgage was executed the bankrupt had on deposit at the bank $1,000 in cash, which the bank did not demand or receive. Some three or four months prior to said date the bankrupt had on deposit in the bank over $9,000, which it might legally have applied upon his indebtedness. The president of the bank testifies that he did not know of any additional debts of the bankrupt until some weeks after the mortgage was given by him, when his wife died and notes signed by the bankrupt and her were filed in the probate court, where her estate was being administered. The master has rightfully found that there are not sufficient facts in this record to sustain the burden of the plaintiff to prove that the bank had reasonable cause to believe that the mortgage amounted to a preference.

[2] The plaintiff offered in this connection the testimony of a small number of witnesses, consisting of the president of another bank, the attorney for the petitioning creditors, and some other witnesses, whose interests apparently were with the plaintiff, to the effect that at the time of the execution of this mortgage the general reputation of the bankrupt in the community was that of an insolvent person, and that it was commonly reputed that he was insolvent. The court is of the opinion that such testimony is not competent to prove reasonable cause upon the bank's part to believe that the mortgage would amount to a preference. See Hinds v. Keith (C. C. A.) 57 F. 10. Coleman v. Lewis, 183 Mass. 485, 67 N. E. 603, 97 Am. St. Rep. 450, 68 L. R. A. 482, and cases there cited. The reputation of any individual may not be known to the specific person involved. Even were such evidence admissible, in the court's opinion, it is not sufficient of itself to bring home to any individual doing business with the bankrupt such knowledge as is sufficient to invalidate a preference.

[3] It appears that at the time of the first creditors' meeting the bank, by its attorney, filed its claim in bankruptcy as an unsecured claim and voted the same in the election of a trustee in bankruptcy. It is said that at the same time the attorney agreed in open court that he would cause the mortgage to be re-leased, on the ground that, having been made within four months of bankruptcy, it was void. Later the attorney was advised by the referee in bankruptcy that not all such transfers of property were voidable, but only such as were executed at a time when the bankrupt was insolvent and under such circumstances as would lead the transferee to believe that the same would amount to a preference. In this situation, having learned what the law was, the attorney withdrew the claim and filed another, in which it was stated that the bank held and relied upon its mortgage. Trustee contends that filing the first claim was a waiver of the security, and that the agreement of the attorney for the bank to release the mortgage should operate as an estoppel against the enforcement of the same at the present time, and urges that the ignorance of the attorney as to the governing law would not prevent the estoppel.

The court is of the opinion that these contentions are not well founded. If the attorney, by his action in filing the claim, had prejudiced any other creditor, or party in interest, the situation would be different; but his action was only that of counsel, who, after filing his pleading, discovers that his theory of pleading is incorrect and thereupon amends. Such action does not create an estoppel, unless somebody has been misled and thereby prejudiced. The same question arose in the case of In re Ashland Steel Co. et al., 168 F. 679 (C. C. A. 6th Circuit), where the court said:

"In order to lay the foundation of an equitable estoppel it must be made to appear that the other party has lost some right or has been led into some course of conduct whereby he will suffer injury if the act or representation of the party to be estopped is revoked or held for naught; and within the scope of its jurisdiction, the court of bankruptcy is a court of equity, as well as of law. * * * We think the fair inference is that their voting was an inadvertence on their part, as well as on that of the referee, and without any declaration of intention to surrender their priority in the bankrupt's assets in order to qualify themselves to vote for a trustee. It was a mutual mistake, against the consequences of which equity would relieve. Nor is a party bound by an election made under a misapprehension of one's rights, especially where the other party suffers no injury from its revocation. No harm was done, or is suggested as possible to have occurred, to any one. * * * We think these views are in accord with prior decisions upon the subject in other jurisdictions, where

similar circumstances existed, and like principles were applicable."

Nor was there any estoppel created by counsel's statement that he would have the mortgage released. As an agreement the transaction was void for want of consideration. As an estoppel it is ineffective, because no one was misled or prejudiced.

[4] It appears in evidence that, a short time prior to the filing of the petition in bankruptcy, the bank's president stated to one of the petitioning creditors that, if he would withhold the filing of the petition in bankruptcy until after the four months period had expired, the bank would give him $300, either as a fee or as a purchase of the claim; but in the opinion of the court this fact is immaterial. It may well be that the president of the bank desired to avoid litigation as to the validity of the mortgage, and that, having learned the full facts as to the bankrupt's financial condition, after the execution of the mortgage, he was fearful of the consequences; but he had a right to purchase the petitioning creditor's claim, or to persuade him not to file his petition in bankruptcy, even though that persuasion were accompanied by a cash consideration.

The intent of the Bankruptcy Law is to divide the bankrupt's property equally among all of his creditors, and in order to achieve that result Congress wisely provided that no pre-existing debt might be paid or secured out of the bankrupt's estate, to the prejudice of other creditors, at any time within four months' time prior to the filing of the petition, if the person receiving payment or security, acting as a reasonably prudent man, would have reasonable cause to believe that the payment or transfer would in fact prefer him over other creditors. All preferences were not invalidated, but only such as were accompanied by the specific facts required as a condition to the voidability of the transfer. Nothing less than such reasonable cause to believe that a preference would result will satisfy the provisions of the act. Uneasiness and mere suspicion are not sufficient; but the trustee must prove knowledge of such facts as will lead a reasonably prudent man to believe that he is getting more than other creditors will receive.

In the opinion of the court, the master is correct in his conclusion that the trustee has not sustained the burden of proof as required by the act. The exceptions are overruled, and the plaintiff's bill is dismissed, at his costs, payable in due course of administration.