**In re Tony S. CHANNAKHON and Phasuree Channakhon, Debtors.**

#### No. 08–60826.

United States Bankruptcy Court, S.D. Ohio, Eastern Division. at Columbus.

Feb. 24, 2012.

Robert R. Goldstein, Columbus, OH, for Debtors.

## MEMORANDUM OPINION AND ORDER ON FIFTH THIRD MORTGAGE COMPANY'S OBJECTION TO THE TRUSTEE'S FINAL REPORT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

The matter before the Court has its genesis in a notary public's failure to certify a debtor's acknowledgment of her signature on a mortgage, an all-too-common scenario that has resulted in numerous judicial opinions adjudicating the avoidability of mortgages based on so-called blank acknowledgments. But in this case the Chapter 7 trustee, Susan L. Rhiel ("Trustee"), and the holder of the mortgage ("Mortgage"), Fifth Third Mortgage Company ("Fifth Third"), resolved the avoidance issue consensually by means of an agreed order, so the Court has no occasion to add to this well-developed body of case law. Instead, this decision addresses the Trustee's contention that, by failing to file an unsecured proof of claim within 30 days after the agreed order became final, Fifth Third forfeited its right to participate in the distribution that the Trustee will be making to unsecured creditors.

The Court concludes that Fifth Third may receive a dividend. Fifth Third timely filed a secured proof of claim on account of the Mortgage and associated promissory

note ("Note") in what was then the Chapter 13 case of Tony Channakhon and Phasuree Channakhon.[1] After the Debtors' case was converted to Chapter 7, the Trustee commenced an adversary proceeding against Fifth Third and negotiated an agreed order avoiding the Mortgage to the extent it encumbered Phasuree's one-half interest in the Debtors' residential real property ("Property"). *See* Adv. Pro. No. 10–2241, Doc. 27. According to the Trustee, the finality of the agreed order triggered the 30–day period set forth in Rule 3002(c)(3) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule(s)") for filing unsecured claims that arise from judgments avoiding interests in property and, because Fifth Third failed to file such a claim within the required time, it is barred from receiving a dividend. Fifth Third, however, had already timely filed a secured proof of claim and later, in response to the Trustee's final report ("Final Report") (Doc. 143), filed a proper amendment that converted the secured claim into a partially unsecured one. Furthermore, equitable factors favor permitting the amendment. The Court, therefore, holds that Fifth Third may receive a distribution from the funds held by the Trustee.

## II. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2).

## III. Factual and Procedural Background

The Debtors commenced this case on November 3, 2008 by filing a petition for relief under Chapter 13 of the Bankruptcy Code. Because the date established for the meeting of creditors under 11 U.S.C.

§ 341(a) was December 23, 2008, *see* Doc. 7, the general deadline for all creditors (except governmental units) to file proofs of claim was March 23, 2009. *See id.;* Fed. R. Bankr.P. 3002(c) ("In a ... chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code...."). Fifth Third met this deadline when, on November 17, 2008, it filed a secured proof of claim (Claim No. 3–1) in the amount of $151,184.02 on account of the Note and the Mortgage.

Because this matter would not be before the Court if the Debtors' case had continued in Chapter 13 or if it had become a no-asset Chapter 7, the Court will briefly describe how it developed into an asset case. Although their Chapter 13 plan was confirmed, the Debtors fell behind on their plan payments, resulting in an order (Doc. 43) dismissing the case upon the motion of the Chapter 13 trustee. The Debtors then filed a motion (Doc. 47) requesting that their case be reinstated solely for the purpose of converting it to Chapter 7. The Chapter 13 trustee did not oppose the motion, and the Court entered an agreed order (Doc. 48) providing for the reinstatement and conversion of the case, which occurred on February 23, 2010.

Although a deadline of July 6, 2010 was established for filing proofs of claim in the Debtors' Chapter 7 case, *see* Fed. R. Bankr.P. 1019(2)(A) (stating, with exceptions not applicable here, that "[w]hen a ... chapter 13 case has been converted ... to a chapter 7 case.... [a] new time period for filing a ... claim ... shall commence under [Bankruptcy Rule]

---

1. For ease of reference, the Court will refer to the Channakhons individually by first name and collectively as the "Debtors."

3002"), the proof of claim that Fifth Third had filed while the case was pending in Chapter 13 was deemed filed in the Chapter 7 case after conversion. *See* Fed. R. Bankr.P. 1019(3) ("When a ... chapter 13 case has been converted ... to a chapter 7 case ... [a]ll claims actually filed by a creditor before conversion of the case are deemed filed in the chapter 7 case."). Accordingly, Fifth Third did not need to file another proof of claim before the new claims bar date, nor did it do so.

It makes no difference whether a creditor has asserted an unsecured claim in a case converted to Chapter 7 if the trustee has no assets to distribute. But the filing of an unsecured proof of claim matters if the case develops into one in which there is property available to be distributed to unsecured creditors. That is what happened here. After partially avoiding the Mortgage by an agreed order entered on March 29, 2011, *see* Adv. Pro. No. 10–2241, Doc. 27, the Trustee obtained an order authorizing her to sell the Property. One-half of the net sale proceeds were to be paid to Fifth Third on account of the Mortgage to the extent it encumbered Tony's interest (which was not avoided) and the "remaining net proceeds [were to be] used by the Trustee for payment of allowed administrative and unsecured claims of the estate." Doc. 137. The order did not include a provision regarding any unsecured claim of Fifth Third that arose upon the partial avoidance of the Mortgage. On July 28, 2011, the Trustee filed a report of sale stating that she had sold the Property for $155,000. *See* Doc. 141.

Approximately one month later, on August 24, 2011, the Trustee filed the Final Report. Fifth Third filed an objection ("Objection") (Doc. 147) to the Final Report, and the Trustee filed a response ("Response") (Doc. 149) to the Objection. On October 20, 2011, Fifth Third filed an amended unsecured proof of claim (Claim No. 3–2) in the amount of $86,827.74 on account of amounts due under the Note.

■■■ According to the Final Report, after the payment of administrative expenses relating to the sale of the Property and a payment to Fifth Third on account of the Mortgage to the extent it encumbered Tony's interest, the Trustee held the sum of $70,358.87. Of this amount, $11,036.87 was earmarked for payment of the Trustee's fees and expenses, and $24,855.71 was set aside for payment to Rhiel & Associates Co., LPA ("Rhiel & Associates") for the attorney fees and expenses it incurred in connection with its representation of the Trustee.[2] After pay-

---

**2.** If the fees for Rhiel & Associates appear to be higher than they might typically have been in a case where a mortgage was avoided by agreement, there are two reasons for this. First, Fifth Third originally opposed the avoidance requested by the Trustee and relented only after the issuance of the Court's decision in *Rhiel v. Huntington Nat'l Bank (In re Phalen)*, 445 B.R. 830 (Bankr.S.D.Ohio 2011). *See* Resp. at 2 ("Fifth Third filed its response [to the Trustee's motion for summary judgment] and the matter was pending ... when the parties were able to reach an agreement following this Court's decision in [*Phalen*]."). Second, the Debtors failed to cooperate with—and in fact actively opposed—many of the Trustee's actions in this case, including her efforts to sell the Property, making it necessary for Rhiel & Associates to file a motion for turnover against the Debtors on behalf of the Trustee (Doc. 115), which the Court granted. *See* Doc. 121. In any event, Fifth Third did not object to the fees and expenses of either the Trustee or Rhiel & Associates, the Court had no issue with those fees and expenses and no other party in interest filed an objection to the Final Report. Accordingly, on November 22, 2011, the Court entered an agreed order between the Trustee and Fifth Third (Doc. 152) providing that the fees and expenses of the Trustee and Rhiel & Associates would be entitled to immediate payment upon entry of that agreed order.

ing those amounts to the Trustee and Rhiel & Associates, as well as a $250 adversary filing fee to the Clerk of the Court and certain amounts to the IRS and the City of Columbus on account of their priority tax claims, the Trustee has $31,921.09 available for distribution. The Final Report states that the amount of timely filed general unsecured claims (which did not include Fifth Third's unsecured claim because it had not yet been filed) is $112,079.95. A distribution of $31,921.09 on unsecured claims totaling $112,079.95 yields a dividend of approximately 28%.[3] Because the amount of timely filed unsecured claims exceeds the amount available for distribution, the Final Report states that no payments will be made to the holders of tardily filed unsecured claims.[4]

The amount of timely filed general unsecured claims set forth in the Final Report does not, of course, include the unsecured claim that Fifth Third filed in response to the report. Adding the $86,827.74 amount of Fifth Third's unsecured claim to the $112,079.95 in other general unsecured claims results in a total unsecured claims pool of $198,907.69. A distribution of $31,921.09 against unsecured claims totaling $198,907.69 yields a dividend of approximately 16%—less than the approximately 28% distribution that the Final Report would have reflected had the dividend been calculated correctly, but

more than the 6.9% dividend that the Final Report actually set forth.

## IV. Legal Analysis

### A. The Trustee Was Not Obligated to Reclassify Fifth Third's Secured Claim.

■■■ For the reasons explained below, the Court sustains the Objection. It is important to note at the outset, however, that the Court is not holding that the Trustee had the responsibility to reclassify Fifth Third's secured proof of claim as unsecured. The Court rejects Fifth Third's contention that the Trustee had such a duty, *see* Objection at 10–12, and rejects as well Fifth Third's argument that it did not need to file an amended claim in order to receive a dividend. *Id.* at 10. It is true that the Trustee's avoidance of the Mortgage to the extent it encumbered Phasuree's interest in the Property left Fifth Third holding a partially unsecured claim. But there is a critical distinction between having a claim and filing a proof of claim. In a Chapter 7 case, "[i]f an unsecured creditor wishes to participate in the distribution of the assets of a bankruptcy estate, the creditor must file a timely proof of claim with the bankruptcy court." *PCFS Fin. v. Spragin (In re Nowak)*, 586 F.3d 450, 454 (6th Cir.2009) (relying on Bankruptcy Rule 3002(a), which states that "[a]n unsecured creditor

---

**3.** The Final Report states that unsecured creditors will receive a dividend of 6.9%. During the hearing on the Final Report, it became apparent that the discrepancy between the 6.9% and 28% dividend was the inadvertent result of an error in calculation and that the correct amount to be distributed to the holders of timely filed unsecured claims is in fact $31,921.09.

**4.** The excusable neglect standard of Bankruptcy Rule 9006(b) that has been used to permit late filings of proofs of claim in Chapter 11 cases does not apply to the late filing of claims in Chapter 7 cases. *See Pioneer Inv.*

*Servs. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 389, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ("The 'excusable neglect' standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases."). Thus, a creditor will receive a distribution on a tardily filed general unsecured claim only if the creditor lacked notice or actual knowledge of the case in time to file a timely proof of claim or if assets remain after the payment in full of timely filed general unsecured claims. *See* 11 U.S.C. § 726(a)(2)(C) & (a)(3).

... must file a proof of claim ... for the claim ... to be allowed"). And even if a creditor has filed a secured claim, it nonetheless must file an unsecured proof of claim or amend its secured claim in order to receive a distribution of property of the estate set aside for unsecured creditors. *See In re Padget,* 119 B.R. 793, 796 (Bankr.D.Colo.1990) ("The Court concludes that an undersecured creditor in a Chapter 7 case who files a claim denoted a secured claim must timely file an amended, or supplemental claim, for its unsecured claim ... if it desires to be treated as an unsecured creditor by the trustee.").

In *Padget,* a creditor filed a secured claim in the debtors' Chapter 7 case prior to the sale of its collateral, but failed to file an amended unsecured proof of claim for the deficiency that resulted from the sale. The trustee filed and gave notice of a final report that provided for no distribution on account of the creditor's claim. The creditor did not object to the final report. *Id.* at 799. The court approved the report, and the trustee issued dividend checks to unsecured creditors. Thereafter, the creditor sought reconsideration of the court's approval of the final report and in so doing made two arguments: (1) "it did not need to file an amended or supplemental proof of claim to reflect its subsequent status as an unsecured, or undersecured, creditor;" and (2) the trustee was "responsible for examining and ascertaining the legal status of each claimant in the estate and properly distributing the estate's proceeds to all creditors with unsecured and undersecured claims." *Id.* at 794. In rejecting these arguments, the *Padget* court noted that "Bankruptcy Rule 3002 specifically and expressly *mandates* filing a proof of claim for 'an unsecured creditor' if that creditor is to receive a distribution from the Chapter 7 estate[.]" *Id.* at 797.

▮ The Court agrees with the *Padget* court in this regard. The Trustee's practice of not distributing property of the estate earmarked for unsecured creditors to a creditor that has not filed an unsecured claim is entirely consistent with the duties imposed on Chapter 7 trustees by § 704 of the Bankruptcy Code, including their duty, "if a purpose would be served, [to] examine proofs of claims and object to the allowance of any claim that is improper." 11 U.S.C. § 704(a)(5). Notwithstanding Fifth Third's suggestion to the contrary, *see* Objection at 10, § 704(a)(5) does not require a Chapter 7 trustee to reclassify a secured claim as unsecured if the only purpose served by the reclassification is a reduction of the distribution to creditors who filed timely unsecured proofs of claim. *See Agricredit Corp. v. Harrison (In re Harrison),* 987 F.2d 677, 680 (10th Cir. 1993) ("As in *Padget,* the proof of claim here was, on its face, for a secured claim.... The bankruptcy court properly treated the claim as secured."); *Olympic Coast Inv., Inc. v. Crum (In re Wright),* 2008 WL 8462954, at *5 (9th Cir. BAP Nov. 3, 2008) ("[W]e ... adopt the persuasive analysis of other courts holding that a trustee does not have to make distributions to an undersecured creditor who did not amend its claim to assert or estimate the unsecured portion."), *aff'd,* 329 Fed. Appx. 137 (9th Cir.2009); *Padget,* 119 B.R. at 798 ("[A] trustee should not, and is not charged with the obligation to, examine a claim with a purpose and view to increasing the claim or improving a claimant's status over that asserted by other creditors. It is not a trustee's duty to protect individual creditors against the consequences of failing to file a claim, filing a late claim, filing an insufficient claim, or failing to properly assert a deficiency claim. It is a trustee's principal duty to object to unsubstantiated, excessive, or unallowable claims."). The Court, therefore,

concludes that the Trustee had no duty to calculate for a partially secured creditor the amount of its unsecured claim.

## B. The Effect of Filing an Amended Unsecured Claim.

The calculus changes once the creditor files an amended unsecured proof of claim in a liquidated amount. In that circumstance, the trustee does not need to calculate the amount of the creditor's unsecured claim in order to make a distribution to it. Here, however, the Trustee contends that Fifth Third is not entitled to a distribution because the unsecured proof of claim it filed in response to the Final Report was untimely. But there is nothing in the Bankruptcy Code or the Bankruptcy Rules that negates an unsecured creditor's entitlement to a distribution merely because its amended unsecured proof of claim is filed after the trustee files the final report. *See In re Spurling,* 391 B.R. 783, 789, 790 (Bankr.E.D.Tenn.2008) ("The trustee ... urge[s] the court to promulgate a judicial rule that amendments to proofs of claim must be filed by the time the ... trustee files the final report with the court.... [N]either the Bankruptcy Code nor any applicable rule of procedure imposes [such] a deadline.... [I]t is up to Congress or the Supreme Court, not this court, to promulgate such a statute or rule."). Indeed, the Trustee does not really argue otherwise. Rather, the Trustee contends that Fifth Third's unsecured proof of claim is untimely because it was not filed within the time period prescribed by Bankruptcy Rule 3002(c)(3), which states as follows:

An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final[ [5]] if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.

Fed. R. Bankr.P. 3002(c)(3).

■ In assessing the Trustee's argument, the Court first rejects Fifth Third's contention that the "permissive wording" of Bankruptcy Rule 3002(c)(3) (*i.e.,* "may be filed within 30 days after the judgment becomes final"), *see* Objection at 12, means that a creditor holding a claim subject to Bankruptcy Rule 3002(c)(3) may simply choose to file the claim after the expiration of the prescribed time. *See Int'l Diamond Exch. Jewelers, Inc.,* 188 B.R. 386, 391 (Bankr.S.D.Ohio 1995) ("Thirty days means thirty days."). In *International Diamond,* the bankruptcy court relied on *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), a Supreme Court decision construing the language of Bankruptcy Rule 4003(b) (under which parties in interest "may" file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors) to mean that "the validity of a claimed exemption could not be contested after the expiration of the 30 day period." *Int'l Diamond,* 188 B.R. at 391. Based on *Taylor,* the bankruptcy court held that, despite Bankruptcy Rule 3002(c)(3)'s use of the word "may," proofs of claim governed by the rule must be disallowed upon objection by the trus-

---

**5.** "A judgment does not become final for the purpose of starting the 30 day period provided for by paragraph (3) until the time for appeal has expired or, if an appeal is taken, until the appeal has been disposed of." Fed. R. Bankr.P. 3002(c) Advisory Committee Notes.

tee if they are not filed within the prescribed time. *See id.*[6] The Court agrees.

■ This is true, however, only if the creditor has not already filed a timely secured claim:

> While [Bankruptcy] Rule 3002(c)(3) . . . permits the filing of a proof of claim to evidence an unsecured claim arising from the avoidance of a lien, such a filing would not appear to be required where, as here, the creditor has already timely filed a proof of claim which is unchallenged by the debtor in every respect except as to its secured status. *See* Advisory Committee Note (1983) ("Although the claim of a secured creditor may have arisen before the petition, a judgment avoiding the security interest may not have been entered until after the time for filing claims has expired. Under Rule 3002(c)(3) the creditor *who did not file a secured claim* may nevertheless file an unsecured claim within the time prescribed.") (emphasis added).

*In re Toronto*, 165 B.R. 746, 752 n. 4 (Bankr.D.Conn.1994). *See also In re Litamar, Inc.*, 198 B.R. 251, 255 (Bankr. N.D.Ohio 1994) ("This Court does not believe, as the Trustee would assert, that a creditor is required under this rule to file a proof of claim after a judgment is rendered if it had already filed a proof of claim before the judgment was rendered."); 9 *Collier on Bankruptcy* ¶ 3002.03[4] n.34 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2011) ("If the creditor has already timely filed a claim, Rule 3002(c)(3) does not *require* that

a new claim be filed after entry of a judgment regarding the creditor."). *See also Americredit Fin. Servs. v. Durham (In re Durham)*, 329 B.R. 899, 902 (Bankr. M.D.Ga.2005) (citing *Collier* for the proposition that a creditor would not have been subject to the deadline set forth in Bankruptcy Rule 3002(c)(3) if its secured claim had been timely, but holding that it was subject to the deadline given that its secured claim was filed after the general bar date). It is undisputed that Fifth Third's secured claim was timely filed.

## C. Fifth Third Filed a Proper Amended Unsecured Claim.

■ The critical question, then, is whether the amendment of Fifth Third's unsecured proof of claim should be permitted. In making this determination, "[t]he threshold inquiry for most courts has been whether the amended proof [of claim] states a brand new claim, in which case it is not allowable as an amendment, or whether the amended claim bears some relationship to the original claim sufficient to escape this disqualification." *In re Milan Steel Fabricators, Inc.*, 113 B.R. 364, 367 (Bankr.N.D.Ohio 1990). After this initial determination is made, courts consider whether equitable factors favor permitting the amendment, with "[t]he crucial inquiry [being] whether [other creditors] would be unduly prejudiced by the amendment." *Roberts Farms Inc. v. Bultman (In re Roberts Farms Inc.)*, 980 F.2d 1248, 1251 (9th Cir.1992). In other words, "[c]ourts are guided in making [the] determination [of whether to permit an amendment to a

---

**6.** At least one court has held that the deadline for filing a proof of claim subject to Bankruptcy Rule 3002(c)(3) is the general bar date or 30 days after the judgment becomes final, whichever is later. *See Rothman v. Mozino (In re Rothman)*, No. 96–12167, 1997 WL 9994, at *6 (Bankr.E.D.Pa. Jan. 7, 1997) ("[T]he Debtor misreads [Bankruptcy Rule] 3002(c)(3) as shortening the bar date for claims based on judgments. Rather, this Rule merely permissively extends the time for a judgment holder, allowing that such a claim 'may be filed within 30 days after the judgment becomes final' even if the judgment is entered after the bar date. It does not shorten the bar date for judgment holders.").

proof of claim] by a two-part test. . . . The first prong . . . is . . . whether the subsequent claim may be fairly characterized as an amendment of a timely filed claim or [is] in substance a new claim." *In re Parsons,* 135 B.R. 283, 284 (Bankr. S.D.Ohio 1991) (citations and internal quotation marks omitted). "The second prong of the test requires the Court to determine whether it would be equitable to permit an amendment." *Id.* at 285. *See also In re Enron Corp.* 298 B.R. 513, 521–522 (Bankr.S.D.N.Y.2003) (When deciding whether to permit an amendment to a proof of claim, a bankruptcy court is guided by a two-prong test. A court must "first look to whether there was timely assertion of a similar claim or demand evidencing an intention to hold the estate liable. If there were such a timely assertion, the court then examines each fact within the case and determines whether it would be equitable to allow the amendment." (citations and internal quotation marks omitted)).

The Court will address each of these prongs in turn.

### 1. Whether Fifth Third's Unsecured Proof of Claim Asserts a New Claim

"Neither the Bankruptcy Code nor Bankruptcy Rules directly address amendment of a proof of claim." *Id.* at 521. "[I]n determining whether to permit a post-bar date amendment to a timely-filed proof of claim under the first prong of the two-prong test," therefore, courts frequently have applied Rule 15(c) of the Federal Rules of Civil Procedure ("Civil Rules(s)"). *Id. See also Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),* 419 F.3d 115, 133 (2d Cir.2005); *Gens v. Resolution Trust Corp.,* 112 F.3d 569, 575 (1st Cir.1997); *In re Stavriotis,* 977 F.2d 1202, 1204 (7th Cir.

1992); *Roberts Farms,* 980 F.2d at 1251; *Spurling,* 391 B.R. at 786; *In re J.S. II, L.L.C.,* 389 B.R. 563, 567 (Bankr.N.D.Ill. 2008); *In re MK Lombard Grp. I, Ltd.,* 301 B.R. 812, 816 (Bankr.E.D.Pa.2003); *In re Blue Diamond Coal Co.,* 147 B.R. 720, 725 (Bankr.E.D.Tenn.1992), *aff'd,* 160 B.R. 574 (E.D.Tenn.1993).

Under Civil Rule 15(c) as applied in the context of proofs of claim, an amended proof of claim will relate back to the original and therefore not constitute a new claim if the amendment "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original [claim]." Fed.R.Civ.P. 15(c)(1)(B). An unsecured claim filed after a successful avoidance action arises out of the same transaction—the one in which the debtor became obligated on the note and mortgage—as the original secured claim. *See McAbee v. Isom,* 116 F.2d 1001, 1003 (5th Cir.1940) ("Where a creditor has originally proved his claim as a secured one, he may be permitted to amend his proof to make it one for an unsecured claim, particularly where his security has subsequently proven invalid or voidable. . . .") (citations and internal quotation marks omitted). *Cf. Wright,* 2008 WL 8462954, at *6 n. 10 (citing *Spurling* for the proposition that . . . [h]ad [the creditor] simply amended its claim to assert . . . a deficiency, the amendment could have related back to its original proof of claim and been deemed timely); *In re Breaux,* 410 B.R. 236, 239 (Bankr.W.D.La.2009) (holding that unsecured deficiency claim relates to and arises out of the same transaction as the original secured claim); *Spurling,* 391 B.R. at 787–88 (same); *In re Delmonte,* 237 B.R. 132, 135–36 (Bankr.E.D.Tex.1999) (same); *In re Marino,* No. 95 B 22465, 1996 WL 691350, at *4 (Bankr.N.D.Ill. Nov. 26, 1996); *In re Richard Roberts Lexington*

*Assocs., Ltd.,* 171 B.R. 546, 549 (Bankr. W.D.Va.1994) (same).[7]

■■■ The view that an unsecured claim for amounts due under a note arises out of the same transaction as a secured claim based on that note is consistent with Sixth Circuit law. *See Spurling,* 391 B.R. at 788 ("The Sixth Circuit considers the underlying transaction or occurrence, within the meaning of [Civil] Rule 15, to be the original transaction between the debtor and the creditor in which the debt was established. The debt is composed of the obligation and the amount due. Other features surrounding the debt, such as whether it is secured or not, are incidental and as to [those features] claims may be amended without incurring the objection that the creditor is erecting a new claim.") (citing *Szatkowski v. Meade Tool & Die Co. (In re Meade Tool & Die Co.),* 164 F.2d 228, 230 (6th Cir.1947) and *In re Ashland Steel Co.,* 168 F. 679, 680 (6th Cir.1909)).[8] On that basis,

the Court concludes that Fifth Third's original secured claim and its subsequent amended unsecured claim both arose out of the transaction in which the Note was signed. Accordingly, the unsecured proof of claim did not assert a new claim.

The Trustee's reliance on *International Diamond* in support of her argument to the contrary is misplaced. In *International Diamond,* a trade creditor filed an unsecured proof of claim against the Chapter 11 debtor for amounts owed it as of the petition date. Approximately three years later, the bankruptcy court entered a judgment against the trade creditor on a preferential-transfer action. After satisfying the judgment, the trade creditor filed a new proof of claim to increase its unsecured claim by the amount it paid in satisfaction of the judgment. The bankruptcy court granted the unopposed objection to the new proof of claim on the bases that: (1) the claim was not filed within the time

---

**7.** *But see In re McBride,* 337 B.R. 451, 460 (Bankr.N.D.N.Y.2006) (holding that a proof of claim that sought to assert an unsecured deficiency claim was a new claim that could not be asserted after the bar date); *In re Matthews,* 313 B.R. 489, 494 (Bankr.M.D.Fla. 2004) ("Secured claims are of an entirely different nature than unsecured claims, notwithstanding that both types of claims may arise from the same transaction—in this case, a loan secured by collateral that is worth less than the debt. Therefore, the attempt to change the status of a claim from secured to unsecured is not considered an amendment, in the traditional sense, that is to be freely allowed.").

**8.** In *Meade Tool,* the Sixth Circuit, after concluding that creditors "are not permitted [to amend a claim] where the effect is to substitute an entirely different cause of action after the time for filing claims has expired," 164 F.2d at 231, held that a creditor who had originally filed a claim as unsecured would be permitted to amend it to assert secured status. *Id.* at 232. The Sixth Circuit also has held that amending a claim from general unsecured to priority status does not constitute the assertion of a new claim. *See Ashland Steel*

*Co.,* 168 F. at 680 ("[I]t was within the power of the court to allow the claims priority, and give them the preference to which by law they were entitled, notwithstanding no definite claim of the kind had been made during the year. It was not the allowance of a new claim ... but the giving [of] full scope to one already proved. It was essentially the ascertainment of its rank to be regarded in the distribution of the assets."). The Court recognizes that there is contrary authority. *See Highlands Ins. Co. v. Alliance Operating Corp. (In re Alliance Operating Corp.),* 60 F.3d 1174, 1175 (5th Cir.1995) ("Amendments to proofs of claim that change the nature of the claim from an unsecured status to a priority status set forth a new claim."); *In re Walls & All, Inc.,* 127 B.R. 115, 118 (W.D.Pa.1991) ("[W]here a claimant attempts to change the nature of the proof of claim, such amendments are generally disallowed."); *In re Taylor,* 280 B.R. 711, 715 (Bankr.S.D.Ala.2001) ("Since Empire is now claiming it is a secured creditor, that makes its claim an entirely new one."). The Court, however, is bound to follow controlling Sixth Circuit precedent.

period set forth in Bankruptcy Rule 3002(c)(3); and (2) the claim could not be considered an amendment of the previously filed proof of claim because a claim for an amount recovered by a trustee in a preference action "arises post-petition as a result of a recovery by the [t]rustee." *Int'l Diamond,* 188 B.R. at 390. *See also In re Accord Grp., Inc.,* 211 B.R. 193, 194 (Bankr.E.D.N.C.1997) (disallowing claim filed more than 30 days after judgment in preference action became final even though creditor had previously filed unsecured claim for prepetition amounts owed by the debtor).

This result makes sense in the context faced by the *International Diamond* court; the trade creditor had no claim against the estate for the amount paid to satisfy the preference judgment until the trustee obtained the judgment. *See West v. Freedom Med., Inc. (In re Apex Long Term Acute Care–Katy, L.P.),* 2011 WL 6826838, at *11 (Bankr.S.D.Tex. Dec. 28, 2011) ("Once the estate recovers the amount of the transfer, the amount recovered does not offset the defendant's claim; it increases it. Because the preferential payment was made on account of a valid antecedent debt, the (now unpaid) amount of that debt is added to the defendant's claim against the estate."); *In re Telesphere Commc'ns, Inc.,* 179 B.R. 544, 553 (Bankr.N.D.Ill.1994) ("Avoidance of a preference results in a return of transferred property to the estate, but may also result in the defendant asserting a claim that otherwise would have been satisfied by the transferred property."). *Cf. APAC–Virginia, Inc. v. Jenkins Landscaping & Excavating, Inc. (In re Jenkins Landscaping & Excavating, Inc.),* 93 B.R. 84, 89 (W.D.Va. 1988) ("The Jenkins had no claim against the bankrupt's estate until the bankruptcy court ordered General to return its fraudulently conveyed property, including the Jenkins' note, to the estate of JLE."). By contrast, the partial avoidance of the Mortgage did not give rise to a new claim; instead, it merely rendered a portion of the already existing claim based on the Note an unsecured claim.

## 2. Whether Equitable Factors Support the Amendment

The other restriction on an amended proof of claim is the requirement that it be equitable to permit the amendment. In evaluating the equities, the Sixth Circuit has considered (in the context of whether a complaint may be amended under Civil Rule 15(c)) factors such as "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the [filing] party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment[.]" *Moross Ltd. P'ship v. Fleckenstein Capital, Inc.,* 466 F.3d 508, 518–19 (6th Cir.2006) (internal quotation marks omitted). Courts have applied the same and similar factors in the context of amending proofs of claim. *See Stavriotis,* 977 F.2d at 1205; *In re Xechem Int'l, Inc.,* 424 B.R. 836, 841 (Bankr.N.D.Ill.2010); *Liddle v. Drexel Burnham Lambert Grp., Inc (In re Drexel Burnham Lambert Grp., Inc.),* 159 B.R. 420, 425 (S.D.N.Y.1993); *Parsons,* 135 B.R. at 285.

On balance, the Court concludes that these factors weigh in favor of permitting Fifth Third to receive a distribution on its amended unsecured claim. Although the claim certainly could have been filed sooner than it was, the Court finds no bad faith or undue delay on the part of Fifth Third, which filed its amended claim in response to the Final Report. Fifth Third filed no previous amendments, so there is no repeated failure to cure deficiencies by previous amendments. In addition to unfair prejudice (which is discussed below), notice is "critical . . . in determining whether an amendment should be granted." *Miller v. Am. Heavy*

*Lift Shipping*, 231 F.3d 242, 250 (6th Cir. 2000) (internal quotation marks omitted). As previously discussed, the Trustee's awareness of Fifth Third's secured proof of claim and the effect that the partial avoidance of the Mortgage would have on the claim did not obligate the Trustee to make a distribution to Fifth Third in the absence of its filing an unsecured claim. The Court, however, finds that the Trustee's knowledge did provide sufficient notice of the existence of Fifth Third's unsecured claim for the purpose of determining whether an amendment should be permitted. *Cf. McAbee*, 116 F.2d at 1003 ("[A] secured claim is always potentially an unsecured one. If the security fails in whole or in part the equity of the case will generally require that recognition be given the unsecured debt. An amendment of the claim is the usual and an orderly way to attain this."); *Richard Roberts*, 171 B.R. at 548–49 ("[T]he deficiency claim of Marble Bank arose from the same transaction or occurrence as the timely filed secured claim. Moreover, Marble Bank has given sufficient notice of its claim in the course of the bankruptcy proceeding by timely filing its secured claim.").

Nor would amendment be futile. Indeed, Fifth Third will receive a dividend on its unsecured claim as a result of the amendment. And that is the rub—other unsecured creditors will receive less if Fifth Third is permitted to amend its claim. As the Trustee points out, the "[a]llowance of [Fifth Third's] claim would result in a diminished distribution" to other unsecured creditors. Resp. at 4.

■ It may well be that a decreased dividend constitutes prejudice to the creditors who otherwise would have received more. *See In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414, 422 (Bankr. S.D.Ohio 1993) ("[M]ost amendments to proofs of claims brought after the bar date create prejudice to the extent that their allowance will often diminish the amount of the otherwise available distribution. . . ."). But a decreased dividend—in and of itself—"does not establish the kind of 'prejudice' [that] would preclude amendment" of a creditor's claim. *In re Dietz*, 136 B.R. 459, 469 (Bankr.E.D.Mich.1992). *See also Gens*, 112 F.3d at 575 ("Gens . . . suggests simply that allowing the . . . amendment prejudices unsecured creditors, who may receive less . . . than would have been received were the FDIC claim not allowed. But the standard Gens proposes would preclude virtually any amendment, since it dispenses with the requirement that the debtor or trustee show 'unfair' prejudice. [S]omething more than mere creditor disappointment is required to preclude amendment."); *In re Stoecker*, 5 F.3d 1022, 1028 (7th Cir.1993) ("The bankruptcy judge thought there was harm to other creditors because if the bank's claim is allowed, the entitlements of the unsecured creditors will be cut down. This is a misunderstanding of what it means for an error to be harmful in the sense of 'prejudicial,' that is, entitling the person harmed to complain. To say that an error is prejudicial means not that if the error is corrected someone will lose, which is almost always true, but that the error itself imposed a cost, as by misleading someone."); *McAbee*, 116 F.2d at 1003 ("Appellant has a provable debt unsecured. Not only has this estate not been closed, but no dividend has yet been paid. To allow her to prove it will be only just to her and will do other creditors no wrong.") (citations and internal quotation marks omitted); *Ashland Steel*, 168 F. at 682 (holding that priority creditors were not harmed by other creditors' amendment of their claims from general unsecured to priority status because, although the objecting priority creditors "may lose the increase in dividends which they would gain by shutting the others out . . . the sum of the whole matter is that those creditors are put on the same plane

with the [objecting creditors], a position to which they are equally entitled unless by some slip, which the law treats as fatal, they have lost it").

In short, a decreased dividend alone is insufficient to prohibit an amendment because "it is not whether such prejudice exists [that matters], but whether the prejudice is undue or substantial." *Outdoor Sports*, 161 B.R. at 422. In *Outdoor Sports*, the bankruptcy court noted that "substantial or undue prejudice involves an irrevocable change in position or some other detrimental reliance on the status quo." *Outdoor Sports*, 161 B.R. at 422 (internal quotation marks omitted).[9] There is no evidence of any such irrevocable change in position or detrimental reliance on the part of creditors here.[10] The Court, therefore, finds that no undue or substantial prejudice to other creditors will result from Fifth Third's amendment of its claim. Based on the foregoing, the Court concludes that it would not be inequitable to allow Fifth Third's amendment to its claim.

## V. Conclusion

For the foregoing reasons, the Court sustains the Objection and holds that, to the extent that Fifth Third's unsecured claim is not otherwise subject to reduction or disallowance, its amended claim is allowed, and it may participate in the pro rata distribution of property that the Trustee will be making to the holders of general unsecured claims.

**IT IS SO ORDERED.**

---

**9.** *See also In re Cavalier Indus., Inc.*, No. 99–3173, 2003 WL 716291, at \*4 (Bankr.E.D.Pa. Feb. 6, 2003) ("As a general rule unsecured creditors are claimants of equal legal rank entitled only to share *pro rata* in whatever remains after payment of secured and priority claims.... Here the Trustee has asserted no detrimental reliance by any creditor on a particular percentage but merely that each creditor will receive a smaller dividend by reason of the participation of these additional creditors in the distribution.") (citation omitted); *Dietz*, 136 B.R. at 469 ("[T]he type of prejudice which would bar a creditor from amending its proof of claim typically involves an irrevocable change in position or some other detrimental reliance on the status quo.").

**10.** While there conceivably could be unusual circumstances in which a creditor holding a claim against a Chapter 7 estate detrimentally relies on, or irrevocably changes position based on, a trustee's final report, nothing in the record suggests that the Court is faced with such a circumstance here. In fact, there is little—if any—possibility that there could have been an irrevocable change in position or detrimental reliance in this particular case given that, even when Fifth Third's unsecured claim is included in the distribution to unsecured creditors, the dividend is approximately 16%—more than the 6.9% dividend that the Final Report erroneously notified creditors they would be receiving. Indeed, because there is no plan of reorganization or liquidation in a Chapter 7 case, it is unlikely that there will be an irrevocable change in position or detrimental reliance in a Chapter 7 case even when the final report is accurate. By contrast, detrimental reliance and an irrevocable change in position will be more common in Chapter 11 and Chapter 13 cases, especially after confirmation of the plan. *See, e.g., In re Winn–Dixie Stores, Inc.*, 639 F.3d 1053, 1056 (11th Cir.2011) ("Although amendment should be freely granted prior to confirmation ... amendment of a creditor's claim after confirmation of a plan can render a plan infeasible or alter the distribution to other creditors [after they have voted to accept the plan.]"); *In re Wilson*, 136 B.R. 719, 723 (Bankr.S.D.Ohio 1991) ("The Debtor vehemently opposes allowance of the Supplemental Claim and argues that she has satisfied, in full, her obligations to AVCO under the terms of the Plan. The Plan, contends the debtor, is expected to be completed shortly. Allowance of the Supplemental Claim at this late date would be inequitable given the amount of money she has paid AVCO through the Plan and AVCO's tardiness in filing its supplement.").